UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
     v.                           )     Cr. No. 11-156-WES
                                  )
CARLOS VAZQUEZ                    )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

     Defendant Carlos Vazquez has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 39) in the above-captioned matter.  The Government has objected to the Motion (ECF No. 44).  Vazquez has filed a Reply (ECF No. 50) to the Government's Objection.  The Court has determined that no hearing is necessary.  For the reasons that follow, the Motion is DENIED.

I.  Background and Travel

     On September 7, 2011, a Grand Jury sitting in the District of Rhode Island indicted Vazquez on charges of being a felon in possession of a firearm (Counts I-IX), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession of a firearm with an obliterated and altered serial number (Count X), in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and possession with intent to distribute cocaine (Count XI), in violation of 21 U.S.C. §§

841(a)(1) and (b)(1)(c).  Vazquez was arrested and arraigned on the Indictment on September 16, 2011.

On January 25, 2012, Vasquez entered a guilty plea, without a written plea agreement, to all charges.  He was sentenced on April 17, 2012, to concurrent terms of 120 months' imprisonment as to Counts I-IX and XI and 60 months incarceration as to Count X, also to run concurrently, followed by three years of supervised release.  A special assessment of $1,100 was also imposed.  An Amended Judgment was entered on April 26, 2012.

Vazquez appealed his sentence to the Court of Appeals for the First Circuit, which, in an unpublished judgment dated April 30, 2013, denied the appeal.  The Court of Appeals' Mandate issued on May 22, 2013.  Vazquez filed a petition for certiorari in the United States Supreme Court, which was denied on October 7, 2013.

On October 2, 2014, Vazquez timely filed the instant Motion.[1] The Government filed its Objection on February 27, 2015, and Vazquez filed his Reply on April 15, 2016.

II.  Discussion

    A.  Law

        1.  Section 2255

Section 2255 provides in relevant part:

---

[1] The Motion is dated October 2, 2014, and is deemed filed on that date.  See Houston v. Lack, 487 U.S. 266, 270 (1988)

> A person in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited. A court may grant relief pursuant to § 2255 in instances where the court finds a lack of jurisdiction, a constitutional error, or a fundamental error of law. United States v. Addonizio, 442 U.S. 178, 185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Moreover, "§ 2255 is not a substitute for direct appeal." Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing cases).

### 2.   Strickland

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." Lema v. United States, 987

---

(concluding that pleadings are deemed filed on the date prisoner relinquishes control over documents).

F.2d 48, 51 (1st Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). However, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) that his "counsel's representation fell below an objective standard of reasonableness"; and
(2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 687-88, 694; see also United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690). With respect to the prejudice requirement under Strickland, a "reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Id. (quoting

4

González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001). "In making the prejudice assessment, [the court] 'focus[es] on the "fundamental fairness of the proceeding."'" Id. (quoting Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007) (quoting González-Soberal, 244 F.3d at 278)). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 107 (D.P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Strickland instructs that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689; see also id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

The same principles apply in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Hill Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla v. Kentucky, 559 U.S. 356, 371 n.12 (2010) ("In Hill, the Court recognized — for the first time — that Strickland applies to advice respecting a guilty plea."). The first prong of the Strickland test is "nothing more than a restatement of the standard of attorney competence" described above. Hill, 474 U.S. at 58.

6

> The second, or "prejudice," requirement, on the other
> hand, focuses on whether counsel's constitutionally
> ineffective performance affected the outcome of the plea
> process. In other words, in order to satisfy the
> "prejudice" requirement, the defendant must show that
> there is a reasonable probability that, but for
> counsel's errors, he would not have pleaded guilty and
> would have insisted on going to trial.

Id. at 59; see also Lafler v. Cooper, 566 U.S. 156, 163 (2012)

("In the context of pleas a defendant must show the outcome of the

plea process would have been different with competent advice.").

The Hill Court reiterated that, as stated in Strickland, "these

predictions of the outcome at a possible trial, where necessary,

should be made objectively . . . ." Hill, 474 U.S. at 59-60; see

also Padilla, 559 U.S. at 372 (noting that "to obtain relief on

this type of claim, a petitioner must convince the court that a

decision to reject the plea bargain would have been rational under

the circumstances").

    B.   Claims of Error

Vazquez raises a number of challenges to his sentence,

including: sentencing factor manipulation; double-counting of

sentencing enhancements; failure to turn over exculpatory

evidence; substantive unreasonableness of his sentence; and

ineffective assistance of counsel. To the extent possible, the

Court will group his overlapping claims and arguments together.

    1.   Sentencing factor manipulation/entrapment

Vazquez argues that his sentence was the result of sentencing factor manipulation. (Mot. 5.) In support, he states that:

> From 3/2010 through 7/2011, ATF conducted an undercover operation in Providence, RI, during which, in a repeated series of nearly identical recorded transactions, I was entrapped to sell firearms and narcotics to an undercover agent. The 14-month long sting, involving at least eight repetitive transactions of the same general nature, usually one firearm at a time, caused me to be unfairly subject to an enhancement for transferring 8 or more firearms. In both length of time, and number of transactions, this sting constituted sentencing factor manipulation (a/k/a sentencing entrapment). The lone cocaine transaction doubled my statutory maximum penalty, and the lone transaction involving two firearms insured application of the trafficking enhancement, buttressing the inference of improper sentencing manipulation.

(Id.) Vazquez further contends that defense counsel "ineffectively failed to raise the defense of sentencing entrapment. Where sentencing factor manipulation was so evident, and where I was not bound by any plea agreement, counsel had no reasonable strategy supporting his error." (Id.)

The First Circuit addressed Vazquez's sentencing manipulation and ineffective assistance of counsel claims on direct appeal:

> We turn first to Vazquez's claim that, with its investigative methods, the government improperly manipulated Vazequez's ultimate sentence. Vazquez concedes that the claim is subject to plain error review by this court. However, regardless of the standard of review applied, the record reveals no "extraordinary misconduct" by the government capable of undergirding the claim. See United States v. Egemonye, 62 F.3d 425, 427 (1st Cir. 1995). Vazquez also asserts a related claim of ineffective assistance of counsel, arguing that

his counsel should have pursued the sentence-manipulation claim at sentencing. Normally, we would decline to adjudicate such a claim of ineffective assistance on direct appeal. "In the exceptional case, however, where the record is sufficiently developed, and critical facts are not in dispute, such claims may be reviewed." United States v. Ofray-Campos, 534 F.3d 1, 34 (1st Cir. 2008). On the present record and in light of our conclusion that Vazquez's claim of sentencing error falters no matter the standard of review applied, Vazquez cannot demonstrate any prejudice flowing from counsel's failure to raise the claim. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984) (discussing prejudice requirement for ineffective assistance claims).

United States v. Vazquez, No. 12-1536, slip op. at 1 (1st Cir. Apr. 30, 2013). The First Circuit's decision effectively disposes of this claim.

In this Court, Vazquez also faults counsel for telling him, "without any basis . . . that the defense of entrapment would fail." (Mot. 8.) On its face, this argument appears to be the same as his claim that counsel "ineffectively failed to raise the defense of sentencing entrapment." (Mot. 5.) As noted above, the First Circuit rejected that claim. Vazquez, No. 12-1536, slip op. at 1. To the extent, however, that Vazquez intends to argue that counsel failed to investigate a defense of entrapment, the contention differs, and the Court will consider it on that basis. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating that pro se documents are "to be liberally construed").

Strickland instructs that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. The defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689; see also id. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Vazquez overlooks the possibility that counsel's statement that an entrapment defense "would fail," (Mot. 8), was a "reasonable decision" based on his "reasonable professional judgment[]." Strickland, 466 at 691; see also id. at 690 ("[C]ounsel is strongly presumed to have . . . made all significant decisions in the exercise of reasonable professional judgment."). "Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is

implausible or insubstantial as a matter of law . . . ." Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993) (quoting Cepulonis v. Pepe, 699 F.2d 573, 575 (1st Cir. 1983)); see also Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (noting that "failing to pursue a futile tactic does not amount to constitutional ineffectiveness" (quoting Com. v. Vieux, 671 N.E.2D 989, 990 (Mass. App. Ct. 1996))).

Although to Vazquez, in hindsight, it may appear that an entrapment defense should have been pursued, the Court must avoid hindsight in evaluating counsel's performance but, rather, "reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; Lema, 987 F.2d at 56 ("While these trial tactics may appear dubious to the petitioner in hindsight, especially in the grim reflection of the intervening convictions, the reviewing court must be persuaded that the failed trial strategy was not within the 'wide range of reasonable professional assistance' contemplated by Strickland."). The Court is not persuaded that, had counsel attempted to present an entrapment defense, the result of the proceeding would have been different. See Lafler, 566 U.S. at 163 (noting that defendant must show that the "outcome of the plea process would have been

different with competent advice"). Therefore, Vazquez's sentencing manipulation/entrapment argument is rejected.

### 2. Double-counting of sentencing enhancements

Vazquez also challenges the application of the United States Sentencing Guidelines ("U.S.S.G.") to his sentence:

> The Court enhanced my offense level by 4 points, under U.S.S.G. §2K2.1(b)(5), and by 4 more, under U.S.S.G. §2K2.1(b)(6)(B).[2] Each enhancement punished me for the same conduct: selling firearms to another who I had reason to believe intended to use it to commit a felony. Because my sentence was based on these two enhancements, double counting the same conduct, my sentence was unfairly and erroneously enhanced.

(Mot. 15); see also (id. 9)("Both double-counted enhancements were based on the undercover's one-time statement that he would use the guns for retaliatory shooting.").

The Court has already addressed the double-counting allegation. Defense counsel made the same argument at Vazquez's sentencing hearing, as is reflected in the transcript of that hearing. (Transcript of April 17, 2012, Sentencing Hearing (ECF

---

[2] Section 2K2.1(b)(5) states that: "If the defendant engaged in the trafficking of firearms, increase by **4** levels." Section 2K2.1(b)(6)(B) provides in relevant part that if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels."

No. 34) ("Sent. Hrng. Tr.") 13-16.)   The Court denied the

objection, stating:

> With respect to 2K2.1(b)(5) and (b)(6), the number
> of firearms and the manner of the transaction clearly
> satisfy the 2K2.1(b)(5) requirement and the criteria set
> forth in the guidelines and expanded upon in Application
> Note 13.[3]
> And the same is true with the 2K2.1(b)(6)(B)
> argument that the firearm was transferred with the
> knowledge, intent or reason to believe that it would be
> used or possessed in connection with another felony
> offense.

(Id. 21.)

> The First Circuit addressed this claim as well:

> We turn next to Vazquez's claim of double counting.
> Having considered the issue de novo, we conclude that
> the district court did not engage in improper double
> counting when it simultaneously imposed enhancements
> under U.S.S.G. §§ 2K2.1(b)(5) and 2K2.1(b)(6)(B).  See
> U.S.S.G. §§ 2K2.1, application note 13(D); United States
> v. Wallace, 461 F.3d 15, 36 (1st Cir. 2006)(setting out
> general double counting principles);[4] cf. United States
> v. Juarez, 626 F.3d 246, 251-56 (5th Cir. 2010).

---

[3] Application Note 13(D) addresses the interaction of one
subsection of the U.S.S.G. with other subsections:

> In a case in which three or more firearms were both
> possessed and trafficked, apply both subsections (b)(1)
> and (b)(5).  If the defendant used or transferred one of
> such firearms in connection with another felony offense
> (i.e., an offense other than a firearms possession or
> trafficking offense) an enhancement under subsection
> (b)(6)(B) also would apply.

U.S.S.G. §2K2.1, cmt. n.13(D) (italics omitted).  The Sentencing
Commission clearly envisioned the type of situation about which
Vazquez complains.

[4] In Wallace, the Court of Appeals stated:

, No. 12-1536, slip op. at 2.

Vazquez is simply rehashing an argument already rejected by this Court and by the First Circuit. Consequently, the claim provides no basis for relief under § 2255.

###### 3. Failure to turn over exculpatory evidence

Vazquez alleges that:

> The prosecution failed to provide, and my attorney ineffectively failed to request or obtain, exculpatory discovery, i.e., ALL of the recordings of the conversations between the undercover agent and me and, in particular, those conversations in which the agent

---

The defendant argues that the application of this upward departure amounts to impermissible double-counting because the dangerous nature of the TEC-9 firearm used in the robbery was already accounted for in the calculation of the base offense level under U.S.S.G. §2K2.1(a)(4)(B) (unlawful possession of semiautomatic weapon). We reject this argument. "Sentencing factors do not come in hermetically sealed packages, neatly wrapped and segregated from another. Rather, several factors may draw upon the same nucleus of operative facts while nonetheless responding to discrete concerns. Consequently, a degree of relatedness, without more, does not comprise double counting." United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994). While §2K2.1 accounts for Wallace's unlawful possession of the TEC-9, §5K2.6 accounts for the fact that Wallace *used* the weapon in a way that endangered his victims. See United States v. Hardy, 99 F.3d 1242, 1249-50 (1st Cir. 1996)("[T]o the extent a sentencing court supportably finds that a defendant's choice of weapons, and the actual manner of its use, increased the danger to 'unusual' levels, an upward departure under U.S.S.G. §5K2.6 would be permissible.").

461 F.3d at 36 (alteration in original).

> exerted the most pressure upon me. . . . The missing
> recordings were exculpatory, in that they would have
> demonstrated my resist[a]nce to the pressure from the
> undercover agent, and, therefore would have supported
> defenses of entrapment and sentencing factor
> manipulation (a/k/a sentencing entrapment).

(Mot. 6.)[5]  The Government responds that "[n]o such recordings

exist.  All of the recordings made between the defendant and the

undercover agent were provided in discovery."  (Obj. 10.)

As phrased, Vazquez's claim has two components: first, the

Government's alleged failure to turn over allegedly exculpatory

evidence and, second, defense counsel's failure to request or

obtain said evidence.  As noted below, see n.5, Vazquez states

that he did not raise Ground Four on direct appeal "because . . .

such issue requires fact-finding by the district court."  (Mot.

11.)  While this is true with respect to the ineffective assistance

portion of his claim, see Knight, 37 F.3d at 774, Vazquez could —

and should — have raised the "failure to provide exculpatory

evidence," (Mot. 11), allegation on appeal, see Massaro v. United

States, 538 U.S. 500, 504 (2003)(noting the "general rule that

claims not raised on direct appeal may not be raised on collateral

review unless the petitioner shows cause and prejudice"); Knight

---

[5] Vazquez states that he did not raise Grounds Two, Three,
and Four previously because he "could not raise those issue[s] in
[his] direct appeal because each such issue requires fact-finding
by the district court."  (Mot. 11) (citing Massaro v. United
States, 538 U.S. 500 (2003)).

v. United States, 37 F.3d at 774 ("Normally, failure to raise a constitutional issue on direct appeal will bar raising the issue on collateral attack unless the defendant can show cause for the failure and actual prejudice."); see also United States v. Johnson, No. CR-11-123-M, 2014 WL 3827823, at *2 (D.R.I. Aug. 4, 2014)("A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both 'cause' and 'prejudice' or alternatively that he is 'actually innocent' of the offense of which he was convicted." (citing Bousley v. United States, 523 U.S. 614, 622 (1996))).

"Cause" ordinarily consists of "some objective factor external to the defense," for example, that "the factual or legal basis of the claim was not reasonably available to counsel or that 'some interference by officials'" impeded counsel's efforts to raise the claim at the appropriate time. Murray v. Carrier, 477 U.S. 478, 488 (1986). In order to demonstrate prejudice, a petitioner must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Even if cause and prejudice is not shown, a court must still consider whether it should reach the merits of

the claim(s) in order to prevent a "fundamental miscarriage of justice."[6]  Schlup v. Delo, 513 U.S. 298, 314-15 (1995).

Although Vazquez has not attempted specifically to demonstrate cause and prejudice, reading the Motion liberally, see Estelle, 429 U.S. at 106, the Court assumes that the cause Vazquez alleges is either interference by Government officials, ineffectiveness of his counsel, or both.  (Mot. 6.)  As for prejudice, Vazquez claims that the recordings at issue were exculpatory in that they would have supported defenses of entrapment and sentencing factor manipulation.  (Id.)

The Government denies that it withheld any tape recordings of conversations between Vazquez and the undercover agent.  (Obj. 10.)  Vazquez has provided no evidence to the contrary.[7]  The Court need not credit bald allegations.  See Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001) ("Conclusory allegations or factual assertions that are unsupported, fanciful or contradicted by the record, are insufficient." (citing Lema, 987 F.2d at 51-

---

[6] Vazquez does not argue that he is "actually innocent" of the offenses of which he was convicted.  See Johnson, 2014 WL 3827823, at *2; see also Schlup v. Delo, 513 U.S. 298, 314-15 (1995).

[7] Although Vazquez and the Government dispute the existence of additional recordings, the Court finds no need for an evidentiary hearing on this issue because, as discussed infra, Vazquez cannot demonstrate prejudice.

52; Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992))).

"Ineffective assistance of counsel . . . is cause for a procedural default." Carrier, 477 U.S. at 488.  Attorney error short of ineffective assistance of counsel, however, is not.  See id. ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

Vazquez has demonstrated no basis on which counsel should have requested such recordings, especially given the Government's representation that all such recordings were turned over in discovery.  (Obj. 10.)  Although Vazquez states that his "attorney sent a DVD with some but not all of the recordings," (Mot. 6), he does not provide his response to counsel when he claims to have discovered that some of the recordings were missing.  See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").  It is difficult for the Court to reach a conclusion that counsel's claimed inaction fell below the "reasonableness" standard set by Strickland if he thought, even mistakenly, that no additional recordings existed.

See id. ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Nonetheless, even if Vazquez could show cause, he has not demonstrated prejudice sufficient to rise to the level of ineffective assistance of counsel. Specifically, he has failed to show that the error — in this case, counsel's alleged failure to request or obtain additional recordings from the Government — created more than a "possibility of prejudice, but that [it] worked to his actual and substantial disadvantage," thereby infecting the entire proceeding "with error of constitutional dimensions." Frady, 456 U.S. at 170.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.

> We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Moreover, the rule encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with Brady, therefore, the individual prosecutor has a duty to learn of any

> favorable evidence known to the others acting on the
> government's behalf in th[e] case, including the police.

Strickler v. Greene, 527 U.S. 263, 280-81 (1999) (internal citations and quotation marks omitted). "To establish a Brady violation, a habeas petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)." Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005) (citing Strickler, 527 U.S. at 281-82).

In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court articulated the standard for determining materiality as follows: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682; see also Strickler, 527 U.S. at 290 ("[T]he question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (quoting Kyles v. Whitney, 514 U.S. 419, 434-35 (1995))). The Supreme Court likened that standard to the holding in Strickland that "a new

trial must be granted when evidence is not introduced because of the incompetence of counsel only if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Bagley</u>, 473 U.S. at 682 (quoting <u>Strickland</u>, 446 U.S. at 694); <u>see also</u> <u>Strickland</u>, 466 U.S. at 694 (stating that "the appropriate test for prejudice finds its roots in the test for materiality of exculpatory evidence not disclosed to the defense by the prosecution . . . ." (citing <u>United States v. Agurs</u>, 427 US. 97, 104 (1976))).

The Court assumes, for purposes of argument only, that the supposedly missing recordings were withheld by the Government. Similarly, the Court assumes, without so finding, that the recordings were favorable to Vazquez in that they could have been used to impeach the testimony of the undercover agent at trial. Vazquez, however, cannot demonstrate that the evidence in question "was material to guilt or punishment," <u>Conley</u>, 415 F.3d at 188, thereby prejudicing Vazquez, <u>see</u> <u>id.</u>, thereby rising to the level of ineffective assistance of counsel necessary to demonstrate prejudice for the default of his substantive <u>Brady</u> claim.

Vazquez has not demonstrated a reasonable probability that the disclosure of any additional recordings, if they exist, would have resulted in a different outcome of the proceedings.

Specifically, he has not convinced the Court that, had the defense possessed the supposedly withheld recordings, a decision not to plead guilty "would have been rational under the circumstances." Padilla, 559 U.S. at 372. At best, the recordings could have been used to impeach the agent's testimony at trial, and it would have been up to the jury to determine the credibility of the agent versus that of Vazquez. See Hill, 474 U.S. at 59-60 (noting that "predictions of the outcome at a probable trial, where necessary, should be made objectively"). Nor has Vazquez shown (or argued) that the Government would have offered a favorable plea deal. See Lafler, 566 U.S. at 164 (stating that defendant must show that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").

In addition, there being no Brady violation, trial counsel was not ineffective for failing to raise these issues. See Bagley, 473 U.S. at 682; Strickland, 466 U.S. at 694. Having concluded above that Vazquez has not demonstrated a reasonable probability that the outcome of the proceedings would have been different if the supposedly withheld recordings had been provided to the defense, it follows that he has not shown prejudice under Strickland. See 466 U.S. at 694.

4.  Substantive unreasonableness of sentence

Vazquez claims that his sentence was substantively unreasonable for two reasons.  First, he contends that "the guidelines' tail wagged the dog of sentencing me appropriately for each crime."  (Mot. 16.)  Second, he asserts that his sentence "was driven by my vastly overstated criminal history."  (Id. 17.)

Vazquez argued these grounds on direct appeal.  (Id. 3) (listing among grounds raised on grounds for appeal that "[t]he sentence was substantively unreasonable, where it imposed both the statutory maximum penalty for the firearms charges, and a sentence far in excess of the guidelines range for the cocaine charge, based upon a guidelines range driven by the firearms conduct" and that "[t]he sentence was substantively unreasonable, where it was driven in large part by vastly overstated criminal history").  The First Circuit rejected his claims, stating: "We have considered carefully each of Vazquez's theories of unreasonableness but conclude that the district court did not abuse its discretion in imposing the sentence it did."  Vazquez, No. 12-1536, slip op. at 2 (citation omitted).  Although the First Circuit did not elaborate on its reasoning, the record fully supports Vazquez's sentences.

With respect to the first portion of Vazquez's claim, Vazquez contends that "[n]either [his] sentence of 120 months on the cocaine charge, nor the statutory maximum terms of 120 months for

23

the firearms charges, was justified." (Mot. 16.) He appears to challenge both the manner of calculating his sentence as well as the result.

The Presentence Investigation Report (ECF No. 23) ("PSR") describes the calculation of Vazquez's combined offense level:

> The combined offense level, according to §3D1.4, is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the table. According to §3D1.4(a), count as 1 unit the Group with the highest offense level. Any Group that is 9 or more levels less serious than the Group with the highest offense level is to be disregarded. Group One [the firearms charges] has an adjusted offense level of 30, while Group Two [the cocaine charge] has an adjusted offense level of 18. Since the difference is greater than 9, only one unit applies. There is no increase to the offense level in the case of one unit. Based on the foregoing, the offense level is now established at level 30.

(PSR ¶ 27); see also U.S.S.G. §3D1.4.[8] After a three-point downward adjustment for acceptance of responsibility, the total offense level was set at 27. (PSR ¶¶32-33; Sent. Hrng. Tr. 4.)

Although Vazquez may disagree with the "grouping rules" described above, his total offense level was correctly calculated under the guidelines. (Sent. Hrng. Tr. 30.) Vazquez, nonetheless,

---

[8] Although any Group that is nine or more levels less serious than the Group with the highest offense level is disregarded and does not increase the applicable offense level, it "may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level." U.S.S.G. §3D1.4(c).

complains that the advisory guideline range for the firearms charges, "130-162 months imprisonment, [was] far in excess of the statutory maximum for those crimes, 120 months." (Mot. 16.) Despite the advisory guideline range, he received the 120 statutory maximum sentence. (Sent. Hrng. Tr. 30.) Vazquez also questions his sentence for the cocaine charge, claiming that the advisory guidelines range of 41-51 months was "usurped by the grouping rules applying the firearms guidelines to all of the charges because of the modesty of the guidelines range applicable to the cocaine transaction." (Mot. 16.) Vazquez does recognize, however, that the statutory maximum sentence he could have received for the cocaine count was 240 months. (Id.)

As for Vazquez's criminal history, counsel argued in both the defense's sentencing memorandum (ECF No. 25) and at the sentencing hearing that Vazquez's criminal history was overstated and sought a variance to a lower criminal history category. (Def. Sent. Mem. 8-9); (Sent. Hrng. Tr. 4-8, 26). The Court stated:

> When I look at this history that you have of criminal conduct, you have a lot of convictions but most of it is fairly petty stuff. I don't see you as a big-time firearms trafficker. I'm not reading you that way. If I thought you were that, I would go to the high end of the guidelines, which in this case would be around 162 months. I don't put you in that category.

(Sent. Hrng. Tr. 28.) The Court continued:

But, again, I don't see you as a big-time gun
trafficker. But what you were doing is extremely
serious, and it has to be met with a serious sentence.
And it needs to be that way, not just because of what
you were doing and the consequences of putting guns out
in the street the way you were, whether you thought they
were going to Boston or going to Providence or Hartford
or wherever, it doesn't matter, you were facilitating
the market for guns, illegal guns to be used in illegal
activity, including violent activity. There is an
enormous problem that you probably know better than
anyone with guns in the community.

(Id. 29.) The Court emphasized that "the only way for the message

to get out that the courts are going to treat this stuff very

seriously is stiff sentences for you and for anyone else engaged

in it." (Id. 30.)

So while I don't think you're a big-time gun
trafficker, and I don't think you've been engaged in the
crimes of the century, this is bad stuff but not horrible
crimes that you have in your history. I've got to
protect the public, and I've got to send a deterrence
message with the sentence that I impose in this case.
So what do I do with it? The Government wants me
to give you 141 months. I think that's probably too
much, given all of the things that I've said. I do think
the way the guidelines come out in this case, all the
applications of the guidelines are correct, but the sum
total of those calculations are pretty harsh so I'm going
to take a little bit off of what the Government has
recommended, and I'm going to go slightly below the
guideline range and I'm [going] to give you an even ten
years, 120 months. I know that's a harsh sentence. It's
not what you want to hear. It is a harsh sentence, but
for all the reasons I've said, I think it is the sentence
that protects the public and operates as a deterrent and
considers the nature of this crime.

(Id.)

Based on the foregoing, it is clear that the Court considered Vazquez's criminal history in determining his sentence. That is evident not only from the Court's remarks, but also from the fact that the Court did not accept the Government's recommendation and, in fact, imposed a below — guidelines sentence. However, the Court was also required to — and did — consider the factors listed in 18 U.S.C. § 3553(a), including, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant[,]" id. § 3553(a)(1), as well as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" and "to afford adequate deterrence to criminal conduct[,] id. § 3553(a)(2); see also United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008) ("Post-Booker, we made clear that the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result."). Vazquez's sentence was not the result of his "vastly overstated criminal history," (Mot. 17), and was not substantively unreasonable.

5.    Ineffective assistance of counsel

In addition to the ineffective assistance of counsel claims discussed above, Vazquez contends that counsel was ineffective by "promising me a sentence which was unsupported in the law and which

he could not deliver, and by failing to advocate for the promised sentence." (Mot. 9.) Vazquez states:

> Before I pleaded guilty, my attorney told me, in words or substance, "The best I can do for you is 42 months, the worst it will be is five years." Then, after my plea, he told me I would be subject to two 4-level enhancements under s. 2K2.1(b)(5) and 2K2.1(b)(6)(B). . . . I told my lawyer to withdraw, but he did not. Instead, he insisted that he would be able to take 8 points off my offense level. He never succeeded in taking the 8 points off my offense level, and he failed to advocate for the promised 42-month sentence; instead he requested a sentence of 70-87 months.

(Id.)

Vazquez further argues that his plea was not knowing and voluntary because counsel "failed to advise him correctly regarding the enhancements." (Reply 12.) As a result, "Petitioner contends that he did not understand the consequences of pleading guilty." (Id. 13.)

At the January 25, 2012, change of plea hearing, the Court conducted a colloquy with Vazquez to insure that his guilty plea was knowing, voluntary and intelligent. After posing a series of questions to Vazquez to ascertain his competence to enter the plea, (Transcript of January 25, 2012, Change of Plea Hearing (ECF No. 19) ("Plea Hrng. Tr.") 3-5), the Court asked the Assistant United States Attorney to state for the record the maximum statutory

penalties Vazquez was facing, (id. 5-6).  Significantly, the
following exchange followed:

> [The Court].  Have you had an opportunity to speak to
> your attorney, Mr. Corley, about the Federal Sentencing
> Guidelines and how they may apply in this case?
>
> A.  Yes, sir.
>
> Q.  I'm going to ask you several questions about the
> guidelines so that I make sure you understand how they
> work.
>     First of all, do you understand that the sentencing
> guidelines are advisory, not mandatory, and what that
> means as a practical matter is that I have to give
> consideration to the guidelines but I'm not required to
> follow them.  Do you understand that?
>
> A.  Yes, sir.
>
> Q.  So practically speaking, that means the sentence in
> this case may be within the guideline range that's
> determined to apply, or it could be higher than that
> range or it could be lower than that range.
>
> A.  Yes, sir.
>
> Q.  Now, if the sentence I impose is higher than the
> guideline range or higher than what you think it's going
> to be or whatever you've been told it should be by anyone
> for whatever reason, you don't get to take back your
> plea of guilty once you enter it today.  Do you
> understand that?
>
> A.  Yes, sir.
>
> Q.  You also understand that anything you've been told
> about how the sentencing guidelines apply to your case
> are just estimates, and we won't know precisely how they
> apply until the Office of Probation conducts its
> presentence investigation and issues its presentence
> report.
>     You'll have an opportunity to read that report
> along with your attorney, Mr. Corley, and file any

objections that you believe are appropriate.  And once
I rule on any objections from you or the Government and
accept the presentence report, that's when we know how
the guidelines actually apply to your case.  Do you
understand all that?

A.   Yes, sir.

Q.   So once again, if it turns out that the guideline
applications are higher than what you thought they were
going to be or what anyone has told you to expect for
whatever reason, you don't get to take back your plea of
guilty once you enter it today.  Do you understand that?

A.   Yes, sir.

(Plea Hrng. Tr. 7-9.)

It is clear that Vazquez was forewarned before he entered his

plea that any estimates Mr. Corley had previously given him were

simply that, estimates, and that they may not reflect his ultimate

sentence.  In light of those explicit warnings, Vazquez cannot now

be heard to complain that counsel was ineffective for "promising

[him] a sentence which was unsupported in the law and which he

could not deliver . . . ."  (Mot. 9.)

Moreover, Vazquez's claim that his plea was involuntary rings

hollow in light of his affirmative responses during the change of

plea hearing.  For example, Vazquez agreed that he understood the

nature of the charges against him, that he was satisfied with

counsel's representation, that no one had made any promises or

threatened him to get him to plead guilty, and that his decision

to plead guilty was a voluntary decision made because he thought

30

it was in his best interest.  (Plea Hrng. Tr. 8.)  In addition, Vazquez was advised by the Court—twice—that once entered, he could not take the plea back.  (Id. 8, 9.)

Vazquez further argues that, after he pled guilty, counsel informed him that he would be subject to the two enhancements under §2K2.1(b)(5) and (b)(6) discussed above and "insisted" that he would be able to take eight points off Vazquez's offense level, but "never succeeded . . . ."  (Mot. 9.)  Vazquez's argument is meritless.

At the sentencing hearing, counsel argued against application of both enhancements, as well as another enhancement.  (Sent. Hrng. Tr. 8-16.)  That counsel was unable to persuade the Court does not render his performance ineffective.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003); see also Natanel, 938 F.2d at 309-10 (noting that "[t]he Constitution does not guarantee defendant a [] perfect or [] successful defense").

Lastly, Vazquez faults counsel for "failing to advocate for the promised sentence."  (Mot. 9.)  According to Vazquez, before he pled guilty, counsel told him, "in words or substance, 'The best I can do for you is 42 months, the worst it will be is five years.'"  (Id.)  After the PSR was issued, and the Court overruled

the defense's objections and calculated Vazquez's advisory guideline range as 130-162 months, counsel argued for a sentence of 70-87 months. (Sent. Hrng. Tr. 26.) It would have been unrealistic at that point for counsel to have sought a lower sentence. Counsel was not ineffective for declining to pursue a futile argument. See Vieux, 184 F.3d at 64 ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic.").

III. Motion to Appoint Counsel

Vazquez has requested that the Court appoint counsel because he is indigent and unable to afford counsel. (ECF No. 41.) The Court treats the request as a motion.

Vazquez states that "the grounds raised in the motion are too complicated for me to litigate on my own without the assistance of counsel." (Id.) Further, "because several grounds for the motion are based upon my trial counsel's failure to provide effective assistance of counsel, I have never had the opportunity to litigate these issues with the assistance of a lawyer . . . ," and if the Court denies his request, his "trial lawyer's failures will be effectively shielded from judicial review." (Id.)

A court may appoint counsel for a financially eligible person who is seeking relief under § 2255 when "the interests of justice so require . . . ." 18 U.S.C. § 3006A(a)(2). Here, despite his

assertion to the contrary, the grounds for relief presented in the Motion are not unduly complicated, and Vazquez has ably argued his claims. Accordingly, the Court finds that the interests of justice do not require the appointment of counsel in the instant case. The motion to appoint counsel is DENIED.

## IV. Conclusion

For the most part, Vazquez, in essence, is seeking reconsideration of issues already decided by this Court and the First Circuit. The Court has rejected his grounds for relief in their entirety. Accordingly, the Motion is DENIED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Petitioner has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Petitioner is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings. IT IS SO ORDERED.


_____
William E. Smith
Chief Judge
Date:  October 17, 2017